IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TE-MOAK TRIBE OF WESTERN
SHOSHONE INDIANS, on their own behalf
and on behalf of all others similarly situated,
Te-Moak Tribal Council
525 Sunset Street
Elko, Nevada 89801

      Plaintiff,

vs.

GALE NORTON
SECRETARY OF THE INTERIOR,
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

   -and-

JOHN W. SNOW
SECRETARY OF THE TREASURY,
U.S. Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220

      Defendants.

_____/

CASE NO:      (RCL)

## COMPLAINT

Plaintiff, TE-MOAK TRIBE OF WESTERN SHOSHONE INDIANS, hereby sues Defendants, GALE NORTON, Secretary of the Interior and JOHN W. SNOW, Secretary of the Treasury as follows:

1.    This is an action by TE-MOAK TRIBE OF WESTERN SHOSHONE INDIANS, on their own behalf and on behalf of all other similarly situated, for an accounting of their tribal trust funds, and for related relief.

**Parties**

2. Plaintiff, TE-MOAK TRIBE OF WESTERN SHOSHONE INDIANS ("Tribe"), is a federally-recognized Indian tribe, recognized by the United States as a sovereign Indian tribe with legal rights and responsibilities, eligible for the special programs and services provided by the United States to Indians because of its status as an Indian tribe.

3. Defendant Gale Norton is the Secretary of the Interior and charged by law with carrying out the duties and responsibilities of the United States as trustee for the Tribe.

4. Defendant John W. Snow is the Secretary of the Treasury, and in that capacity is custodian of tribal trust funds, and has responsibility with regard to the administration of such funds and the preparation and maintenance of records in connection with those funds.

**Jurisdiction and Venue**

5. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1362. This is a civil action brought by an Indian tribe and arises under the Constitution, treaties and agreements between the United States and the Tribe, federal common law and the federal statutes governing the administration and management of property held by the United States in trust for tribes. The Court also has jurisdiction under 28 U.S.C. § 1361, 5 U.S.C. §§ 702, 706, as this is an action for injunctive relief to compel federal officials to perform a duty owed to the Plaintiff and the Plaintiff class.

6. Venue is properly in this district under 28 U.S.C. §1391(e) because this is an action in which the Defendants are officers and employees of the United States acting in an official capacity, and a substantial part of the events or omissions giving rise to the claims herein have occurred within this judicial district.

**Background**

7. The trust land occupied by the Tribe, which is the subject matter of this action, is as

follows:
  (a) Battle Mountain Colony Reservation - 683.3 acres, consisting of 677.05 acres established by Executive Order on June 18, 1971, with an additional 6.25 acres added by an Act of Congress on August 21, 1967;
  (b) Elko Colony Reservation - 92.80 non-contiguous acres, which was established by Executive Order on March 25, 1918;
  (c) South Fork Colony Reservation - 13,049 acres, which was originally established by Executive Order in 1941 under the provisions of the 1934 Indian Reorganization Act; and
  (d) Wells Colony Reservation, - 80 acres set forth as trust land pursuant to an Executive Order on October 15, 1977 by authority of Public Law #95-133.

8.   Under law, tribal land held in trust by the United States is inalienable except as authorized by Congress. 25 U.S.C. §177. Congress has granted the Secretary of the Interior authority to approve conveyances of certain interests in trust land, such as leases, easements, and rights of way. The law further establishes the terms and conditions under which such conveyances may be made, and generally requires that compensation be paid to the tribe for the use of tribal lands.

9.   By various Acts of Congress, commencing with statutes adopted more than a century ago, Congress authorized the Secretary of the Interior to collect income from tribal trust property and to deposit such trust income in the United States Treasury and other depositary institutions for the benefit of the tribes. E.g., Act of March 3, 1883, c. 141, § 1, 22 stat. 590. By subsequent statutes, Congress directed that interest be paid on tribal trust funds, and required that such trust funds be invested. See e.g., Act of February 12, 1929, c. 178, 45 Stat. 1164, codified as amended, 25 U.S.C. § 161b; Act of June 24, 1938, 52 Stat. 1037, codified as amended, 25 U.S.C. § 162a.

10.  Defendants assumed control and management over trust property of the Tribe. Defendant Secretary of the Interior has approved leases, easements and grants other interests in trust lands of the Tribe, and both Defendants have assume responsibility for collection, deposit and investment of the income generated by trust land of the Tribe. These include funds

Case 1:05-cv-02500-JR    Document 1    Filed 12/30/2005    Page 4 of 12

Te-Moak Tribe v. Gale Norton, et al.
Complaint
Page 4

generated by oil and gas bid deposits, bonuses, rents, lease and royalty payments, grazing and agricultural leases, and judgments paid to the Tribe. Likewise, Defendants assumed control and management over trust property of the Plaintiff class.

11.  Because the United States holds tribal land in trust, it has assumed the obligations of a trustee. United States v. Mitchell, 463 U.S. 206, 225 (1983); Cobell v. Norton, 240 F.3d 1081 (D.C. Cir. 2001). As trustee, the United States has a fiduciary relationship and obligations of the highest responsibility and trust to administer the trust with the greatest skill and care possessed by the trustee. The United States "'has charged itself with moral obligations of the highest responsibility and trust' in its conduct with Indians, and its conduct 'should therefore be judged by the most exacting fiduciary standards.'" Cobell, 240 F.3d at 1099 (quoting Seminole Nation v. United States, 316 U.S. 286, 297 (1942)).

12.  The trust obligations of the United States include, among other duties, the duty to ensure that tribal trust property and trust funds are protected, preserved and managed so as to produce a maximum return to the tribal owner consistent with the trust character of the property.

13.  The trust obligations of the United States include, among other duties, the duty to maintain adequate records with respect to the trust property; to maintain adequate systems and controls to guard against error or dishonesty; to provide regular and accurate accountings to the trust beneficiaries; to refrain from self-dealing or benefiting from the management of the trust property.

14.  Congress has charged the Defendants with fulfilling the obligation of the United States as trustee and with responsibility for the administration and management of all trust property of the Tribe.

15.  Defendants control all of the books and records of account affecting trust funds and trust property. Defendants, however, have never rendered an audit or accounting to the

Tribe or the members of the Plaintiff class for their respective trust monies. Defendants have further failed to establish any effective system or provision for regular or periodic accounting for the trust property and funds. As a consequence, Defendants have kept and continue to keep the Tribe, as the trust beneficiaries, uninformed as to the trust property they own, what income the trust property has produced, and what disposition has been made of the income.

16.     As found by the United States Inspector General for the Department of the Interior, the United States General Accounting Office, and the United States Congress, among others, there are massive and long-standing problems with the Defendants' administration of Indian trust funds. After a series of oversight hearings on Interior's management of Indian trust funds, Congress issued a report condemning those practices. See Misplaced Trust, Bureau of Indian Affairs Mismanagement of the Indian Trust fund, H.R. Rept. No, 102-499, 102d Cong. 2d Sess. (1992). As Congress found:

> Scores of reports over the years by the Interior Department's Inspector General, the U.S. General Accounting Office, the Office of Management and Budget, have documented significant, habitual problems in BIA's ability to fully and accurately account for trust fund moneys, to properly discharge its fiduciary responsibilities and to prudently manage the trust funds. [Id. at 2]. . .
>
> The Bureau has repeatedly ignored directives to undertake needed management reform measures. [Id. at 3]. . .

> As a result of this dismal history of inaction and incompetence, there is no assurance that the Bureau actually desires to, or will, make any substantial advancement toward rectifying the basis financial management failures brought to their attention. Despite a decade of initiatives, the Bureau's headquarters leadership and accountability continue to be woefully inadequate. . . .
>
> It is apparent that top Interior Department officials have utterly failed to grasp the human impact of its financial management of the Indian trust fund. The Indian trust fund is more than balance sheets and accounting procedures. These moneys are crucial to the daily operations of native American tribes and a source of income to tens of thousands of native Americans. [Id. at 5].

Congress further found the Defendants' administration of Indian trust funds to be:

> grossly inadequate in numerous important respects. The Bureau [of Indian Affairs] has failed to accurately account for trust fund moneys. Indeed, it cannot even provide account holders with meaningful periodic statements on their balances. It cannot consistently and prudently invest trust funds and pay interest to account holders. It does not have consistent written policies or procedures that cover all of its trust fund accounting practices. Under the management of the Bureau of Indian Affairs, the Indian trust fund is equivalent to a bank that doesn't know how much money it has.

Id. at 56.

17. Upon information and belief, Defendants' mismanagement of trust funds has resulted in losses to the Tribe, a trust beneficiary, and to other members of the class. However, the extent of such losses is unknown to the Tribe and the class because Defendants have failed to provide the Tribe with a sufficient accounting of trust funds, and further have failed to maintain

beneficiaries for losses to their trust funds. See Misplaced Trust, H.R. Rept. No, 102-499 at 37-41.

18.     By the Act of December 22, 1987, Pub. L. No. 100-202, 101 Stat. 1329, Congress imposed two requirements on Defendants: 1) that they audit and reconcile tribal trust funds, and 2) that they provide the tribes with an accounting of such funds. Congress reaffirmed the two mandates of the 1987 Act in subsequent statutes, namely the Act of October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; the Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915, and the Act of November 3, 1991, Pub. L. No. 102-154, 105 Stat. 990. By these Acts, Congress further required that the Defendants certify, through an independent party, the results of the reconciliation of tribal trust funds as the most complete reconciliation possible of such funds.

19.     To protect the rights of tribes until accountings of their trust funds could be completed, Congress has provided, in each Interior Department Appropriations Act since 1990 that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss." See Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; Act of November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. No. 102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. No. 103-138, 107 Stat. 1379; Act of September 30, 1994, Pub. L. No. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. No. 104-134, 110 Stat. 1341; Act of September 30, 1996, Pub. L. No. 104-208, 110 stat. 3009; Act of November 14, 1997, Pub. L. No. 105-83, 111 Stat. 1543; Act of October 21, 1998, Pub. L. No. 105-277, 112 Stat. 2681; Act of November 29, 1999, Pub. L. No. 106-113, 113 Stat. 1501; Act of October 11, 2000, Publ. L. No. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. No. 107-63.

20. On October 25, 1994, Congress enacted the American Indian Trust Fund Management Reform Act, codified at 25 U.S.C. §§ 4001-61. Under this Act, Congress recognized the United States' pre-existing trust responsibilities, and charged the Defendants with additional responsibilities to ensure proper discharge of the trust responsibilities, and charged the Defendants with additional responsibilities to ensure proper discharge of the trust responsibilities of the United States. These include the duty to provide periodic, timely accountings of trust fund to tribal and individual Indian beneficiaries, and the duty to cause an annual audit of all trust funds to be conducted. 25 U.S.C. §4011; 25 U.S.C. §162a(d).

21. As evidenced by reports issued by Interior Department Inspector General, the General Accounting Office, and the Office of Management and Budget, among others, notwithstanding the foregoing Acts of Congress, Defendants have continued to fail to implement the reforms required by law. The Defendants' continued failure to implement reforms required by Congress and to provide timely and meaningful accountings is now the subject of pending litigation in federal court, Cobell v. Norton, No. 96-1285 (D.D.C.) The proceedings in that case, which are focused on trust accounts of individual Indians, confirm the Government's breach of those obligations by failing to account. See Cobell v. Babbitt, 91 F. Supp. 2d 1 (D.D.C. 1999), aff'd sub norm Cobell v. Norton, 240 F. 3d 1081 (D.C. Cir. 2001).

22. To date, the Defendants have failed to provide the Tribe and other members of the class with an accounting of the Tribe's trust funds.

### Class Action Allegations

23. This action is brought as a class action on behalf of a class consisting of Native American tribes who are beneficiaries of tribal land held in trust by the United States, which tribes have not otherwise brought claims against the United States for an accounting. This action is brought under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure, in that the class is so

, Yankton Sioux Tribe v. Gale Norton, etc. et al.
Complaint
Page 9

numerous that joined of all members is impracticable; there are questions of law and fact common to the class; the claims of the representative plaintiff are typical of the claims of the class; the representative plaintiffs will fairly and adequately protect the interests of the class; and the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for all the defendants; all as is more fully set forth hereinbelow.

24. <u>Numerosity</u>. The class is composed of substantially more than 315 tribal entities who are the beneficiaries of more than 1400 tribal trust accounts.

25. <u>Common questions</u>. Questions of law and fact common to the class include, but are not limited to, the legal standards governing the trust obligations of the United States with respect to the funds in the trust accounts; what accounting, recordkeeping, reporting, and other practices are, have been, and will for the future be, necessary to achieve compliance with such standards; the extent to which, if at all, the defendants have complied with such standards and have implemented or failed to implement such practices; the measures necessary to be taken in order to correct past breaches of trust and bring the activities of defendants into compliance with the law for the future. The commonality of these questions to all members of the class is reinforced by the fact that the funds in the trusts are pooled for investment purposes.

26. <u>Typicality</u>. The claims of the representative plaintiff and all other members of the class arise from the same practices and course of conduct of the defendants and are based on the same legal theory.

27. <u>Fair and adequate representation</u>. The Tribe is a beneficiary of the trust obligations herein involved, as an owner of a tribal trust account, and like all owners of tribal trust accounts, is unable to know whether its account balances are what they should have been in

the absence of the breaches of trust herein complained of. Counsel for the Tribe are experienced in the substantive and procedural law involved in this case. They are counsel to a number of other tribes in Indian trust litigation. Plaintiff's counsel has an extensive practice in federal court, including class action litigation.

28.   <u>Risk of inconsistent or varying adjudication</u>. Substantially all tribal trust accounts are held for the beneficiaries by the Defendants on essentially the same basis and subject to the same obligations and responsibilities of the United States and the Defendants. Moreover, the funds in such accounts are held by Defendants, and invested, in a common pool. Defendants' inadequate recordkeeping and other incompetent system management affects all tribal trust accountholders alike. The duties and obligations of the Defendants need to be ascertained, and adequate systems and controls need to be installed, with respect to all beneficiaries alike, and inconsistent determinations by different courts at the suit of different plaintiffs with respect to such systems and controls would establish incompatible standards of conduct for the Defendants.

**Count I**
**Declaratory Judgment**

29.   The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 28 above.

30.   Defendants owe the Tribe and the Plaintiff class a fiduciary duty and obligations of the highest responsibility and trust to administer the trust property and trust funds with the greatest skill and care possessed by the trustee.

31.   Defendants' fiduciary duties include, among others, the duty to provide each Tribe with a full and complete accounting of the Tribe's trust funds.

32.   Defendants have failed to provide each Tribe with an accounting of the Tribe's

, Yankton Sioux Tribe v. Gale Norton, etc. et al.
Complaint
Page 11

trust funds, and this failure is a breach of Defendants' fiduciary duties to the Plaintiff and the Plaintiff class in violation of federal law.

33.     The Tribe and the Plaintiff class are entitled to a declaratory judgment that the Defendants have not provided the Tribe with a full and complete accounting of the trust funds as required by law.

### Count II
### Injunction Compelling an Accounting

34.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraph 1 through 28 above.

35.     Defendants' continuing failure to provide each Tribe with complete and accurate accountings of its trust funds will cause irreparable injury, as records necessary for proper accounting have been, and many continue to be lost or destroyed, depriving the Plaintiff of the information essential to determining whether the trust funds have been properly administered.

36.     Each Tribe is entitled to declaratory and injunctive relief requiring Defendants to provide a full and complete accounting of all of the Tribe's trust funds.

WHEREFORE, the Plaintiff prays:

1.      For an Order certifying the named Plaintiff under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure as representative of a class consisting of all beneficiaries of Tribal land held in trust by the United States, which have not already bought claims against the United States for an accounting;

2.      For a declaration that the Defendants have not provided the Tribe and class members with a full and complete accounting of their trust funds as required by law;

3.      For an injunction requiring the Defendants to provide a full and complete accounting of the their trust funds;

, Yankton Sioux Tribe v. Gale Norton, etc. et al.
Complaint
Page 12

4.  For an award of attorneys' fees and costs as provided by law; and

5.  For such other relief as may be just and equitable.


DATED THIS  30  day of December, 2005.

        DILLINGHAM & MURPHY, LLP
        Attorneys for Plaintiff
        1155 Connecticut Avenue, N.W., Suite 1120
        Washington, District of Columbia 20036-3419
        Telephone: (202) 835-9880
        Facsimile: (202) 835-9885

        By: _____
          Albert A. Foster, Jr., Esq.
          U.S. Dist. Ct. # 464009


        -and-


        HERMAN & MERMELSTEIN, P.A.
        Jeffrey M. Herman, Esq.
        Stuart S. Mermelstein, Esq.
        18205 Biscayne Boulevard, Suite 2218
        Miami, Florida 33021
        Telephone: (305) 931-2200
        Facsimile : (305) 931-0877